## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLUEBECK HOLDINGS LTD., | Case No. _____ |
| Plaintiff | |
| vs. | Electronically Filed |
| SWN PRODUCTION COMPANY, LLC, SOUTHWESTERN ENERGY COMPANY, SWN ENERGY SERVICES COMPANY, LLC, WILLIAM J. WAY, CARL GIESLER, JR., CHRISTOPHER W. LACY, JOHN KELLY, COLIN O'BEIRNE and ROBERT MCINTOSH, | Jury Trial Demanded |
| Defendants | |

## <u>TABLE OF CONTENTS</u>

I.     COMPLAINT……………………………………………………..1

II.    SUMMARY OF ACTION………………………………………...1

III.   JURY DEMAND………………………………………………….3

IV.    PARTIES…………………………………………………………3

V.     JURISDICTION/VENUE…………………………………………5

VI.    FACTS COMMON TO ALL CAUSES OF ACTION……………6

   a.  CALCULATION OF BLUEBECK'S ROYALTY…………………13

   b.  DEFAULT AS TO SALES PRICE AND VOLUME………………13

   c.  MANIPULATED SALES PRICE AND CONCEALED
      DEDUCTIONS……………………………………………………..17

   d.  DEFAULT AS TO ROYALTY SHARE…………………..…..24

   e.  DEFAULT AS TO ROYALTY ON REIMBURSEMENTS OF
      POST-PRODUCTION COSTS…..…………………...………25

   f.  FAILURES IN THE DEVELOPMENT OF LEASED PREMISES..26

   g.  FAILURE TO MAINTAIN INSURANCE NAMING PLAINTIFF
      AS ADDITIONAL INSURED…………………………….…..29

VII.   AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL
      DEFENDANTS (Federal Civil RICO)………………………30

   a.  FRAUDULENT MARKETING "CONTRACUTAL
      AGREEMENT"……………………………………………….35

b. SWN PRODUCTION'S BAD FAITH ATTEMPT TO INTIMIDATE AND COERCE PLAINTIFF BY WITHHOLDING ALL ROYALTIES……………………..……………………………...……….42

VIII.   AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS (Conspiracy to Violate the RICO Act) ………………………………………………..………………………...43

IX.   AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS (State Law Civil Conspiracy)…………..…….44

X.   AS AND FOR A FOURTH CAUSE OF ACTION AGAINST SWN PRODUCTION AND SWNCO (Common Law Fraud)………45

XI.   AS AND FOR A FIFTH CAUSE OF ACTION AGAINST SWN PRODUCTION (Breach of Contract) ………………………..46

XII.   AS AND FOR A SIXTH CAUSE OF ACTION AGAINST SWN PRODUCTION, SES AND SWNCO (Conversion)…………..47

XIII.   AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST SWNCO (Unjust Enrichment)………………………….48

XIV.   AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST SWN AND SWNCO (Accounting)…………………………………49

XV.   SUMMARY OF RELIEF SOUGHT……………………………..52

## COMPLAINT

Plaintiff BLUEBECK HOLDINGS LTD., for its complaint against defendants SWN PRODUCTION COMPANY, LLC, SOUTHWESTERN ENERGY COMPANY, SWN ENERGY SERVICES COMPANY, LLC, WILLIAM J. WAY, CARL GIESLER, JR., CHRISTOPHER W. LACY, JOHN KELLY, COLIN O'BEIRNE and ROBERT MCINTOSH, alleges as follows:

## SUMMARY OF ACTION

1.     This is an action for violation of the RICO Act, conspiracy to violate the RICO Act and civil conspiracy against all defendants for engaging in a scheme to unlawfully enrich themselves at plaintiff's expense by fraudulently depriving plaintiff of Royalties that it was entitled to receive pursuant to a certain Paid-Up Oil and Gas Lease, and by using the United States Mail and interstate wire communications to perpetrate the fraud.

2.     In furtherance of their fraudulent scheme, the defendants used purported sales transactions between wholly owned subsidiaries to artificially manipulate the Sale Prices upon which plaintiffs' Royalties were calculated and paid, concealed unauthorized deductions from the Sales Price for transportation charges and marketing fees, understated plaintiff's Royalty Share, failed to report fuel usage, and transmitted fraudulent monthly statements via the United States Mail and interstate wire communications.

1

3.     This is also an action against SWN Production Company and Southwestern Energy Company for common law fraud.

4.     This is also an action against defendant SWN Production Company, LLC, for breach of contract and an accounting arising from (i) its failure to properly pay Royalties and other amounts due in accordance with the terms of the Paid-Up Oil and Gas Lease, (ii) its failure to construct and maintain a certain quarry access road in accordance with the Development Plan approved by Bluebeck Ltd., and (iii) its failure to name Lessor as additionally insured on a One Million Dollar ($1,000,000) occurrence policy for general liability insurance; environmental insurance; and care, custody and control insurance for each and every period during which Lessee has conducted operations on the Leased Premises.

5.     Commencing in May 2023 and continuing to the present, the defendants have withheld all monthly payments of Royalties owed to plaintiff in an apparent attempt to extort plaintiff to surrender its claims for unpaid Royalties.

6.     This is also an action against SWN Production Company, Southwestern Energy Company and SWN Energy Company for conversion of Royalties payable to Bluebeck Ltd., and Bluebeck Holdings Ltd.

7.     This is also an action against defendant Southwestern Energy Company for unjust enrichment based on the profits that it derived as a result of the underpayment of plaintiff's Royalties and for an accounting.

2

**JURY DEMAND**

8.      Pursuant to Federal Rule of Civil Procedure 38, plaintiff hereby demands a trial by jury of all issues in this action that are triable by jury.

**PARTIES**

9.      Plaintiff Bluebeck Holdings Ltd. ("Bluebeck Holdings"), is a Colorado corporation with its principal place of business at 15 Remsen Avenue, Roslyn, New York.

10.     Bluebeck Holdings is a resident of Colorado and New York.

11.     Bluebeck Holdings is the owner of 213.8 acres of land in Susquehanna County, Pennsylvania (the "Leased Premises").

12.     On information and belief, defendant SWN Production Company, LLC ("SWN Production") was organized as a Delaware limited liability company, has its principal place of business at 10000 Energy Drive, Spring, Texas, and is engaged in the production and sale of oil, gas and natural gas liquids.

13.     On information and belief, SWN Production is a resident of Delaware and Texas.

14.     On information and belief, defendant Southwestern Energy Company ("SWNCO") is a Delaware corporation with its principal place of business at 10000 Energy Drive, Spring, Texas, and is engaged through its subsidiaries in the production and sale of oil, gas and natural gas liquids.

3

15.     On information and belief, SWNCO is the sole member of SWN Production.

16.     On information and belief, SWNCO is a resident of Delaware and Texas.

17.     On information and belief, defendant SWN Energy Services Company, LLC ("SES") is a Texas limited liability company with its principal place of business at 10000 Energy Drive, Spring, Texas, and is engaged in marketing and transportation of oil, gas and natural gas liquids.

18.     On information and belief, SWNCO is the sole member of SES.

19.     On information and belief, SES is a resident of Texas.

20.     On information and belief, defendant William J. Way ("Way") is the Chief Executive Officer of SWNCO, SWN Production and SES.

21.     On information and belief, Mr. Way is a resident of Texas.

22.     On information and belief, defendant Carl Giesler, Jr. ("Giesler"), is the Chief Financial Officer of SWNCO, SWN Production and SES.

23.     On information and belief, Mr. Giesler is a resident of Texas.

24.     On information and belief, defendant Chris Lacy ("Lacy") is Vice President, Secretary and General Counsel of SWNCO, and Secretary of SWN Production and SES.

25.     On information and belief, Mr. Lacy is a resident of Texas.

4

26.     On information and belief, defendant John Kelly ("Kelly") is employed by SWNCO as Senior Vice President-Northeast Appalachia Division.

27.     On information and belief, Mr. Kelly is a resident of Texas.

28.     On information and belief, defendant Colin O'Beirne ("O'Beirne") is employed by SWNCO as Vice President and Controller of SWNCO, SWN Production and SES.

29.     On information and belief, Mr. O'Beirne is a resident of Texas.

30.     On information and belief, defendant Rob Mcintosh ("Mcintosh") is employed by SWNCO as Accounting Director.

31.     On information and belief, Mr. Mcintosh is a resident of Texas.

## JURISDICTION/VENUE

32.     The Court has subject matter jurisdiction pursuant to 18 U.S.C. §§ 1964 (RICO jurisdiction), 1331 (Federal question) and 1332(a)(1) (diversity of citizenship); and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

33.     The amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.

34.     Venue is proper in this Court pursuant to 18 U.S.C. §§ 1965(a) (transaction of affairs) and 1391(b) (place giving rise to claims).

## FACTS COMMON TO ALL CAUSES OF ACTION

35.    On or about September 23, 2009, Bluebeck Ltd. granted to Fortuna Energy, Inc. ("Fortuna") a five (5) year primary term oil and gas lease (the "Lease")[1] for development and operation of the Leased Premises. A copy of the Lease is attached hereto as Exhibit "A."[2]

36.    The Lease expressly excepted and reserved to Bluebeck Ltd., all minerals of every kind and character other than those defined therein as "Oil and Gas" including, without limitation, bluestone. See, Ex. "A" Section 1 ("Granting Clause").

37.    On or about November 16, 2012 Talisman Energy USA Inc. (formerly, Fortuna) assigned all of its right, title and interest in the Lease to SEPCO-Arkansas.

38.    On or about May 1, 2014, Bluebeck Ltd. and SEPCO-Arkansas entered into an amendment of the Lease that extended its term. A copy of the Amendment of Oil and Gas Lease dated May 1, 2014 is attached hereto as Exhibit "B."

39.    On or about May 1, 2014 SEPCO-Arkansas converted to a Texas corporation ("SEPCO-Texas") under the Texas Business Organization Code 32.32.

40.    By Damage Receipt and Release dated on or about August 18, 2014, Bluebeck Ltd., and SEPCO-Texas agreed to certain terms and conditions upon which

---

[1] Bluebeck Ltd., was erroneously identified in the Lease as Blue Beck Ltd.
[2] The interlineations on Page 1 of the Lease were added after the Lease was signed on behalf of Bluebeck Ltd.

6

SEPCO-Texas was authorized and required, among other things, to construct a proposed well pad, install locked gates near the access road at the entrance to the Leased Premises, and also to build an alternate quarry access road on the Leased Premises. A copy of the Damage Receipt and Release dated on or about August 18, 2014 is attached hereto as Exhibit "C."

41.     On August 18, 2014, Bluebeck Ltd., approved a Development Plan submitted by SEPCO-Texas pursuant to the Lease, for SEPCO-Texas' construction of a proposed well pad, site access road, quarry access road, and associated grading and erosion control. A copy of the approved Development Plan is attached hereto as Exhibit "D."

42.     SEPCO-Texas filed in the Office of the Secretary of State of Texas a Certificate of Conversion, converting SEPCO-Texas to a Texas limited liability company named SWN Production Company, LLC ("SWN Production"), effective November 16, 2014.

43.     Pursuant to the Development Plan, SWN Production drilled three Wells on the Leased Premises in 2015, and five more Wells on the Leased Premises in 2019.

44.     In addition, SWN Production drilled, and Bluebeck Ltd., acquired a Royalty Interest in, eleven Wells on neighboring properties located in Units that include acreage of the Leased Premises.

45.    In or about May 2019, SWN Production presented Bluebeck Ltd., with a proposed Surface Use Agreement providing, in pertinent part, that:

> [Bluebeck Ltd.] hereby grants, sells, conveys, and warrants unto SWN [Production], and its successors and assigns, an exclusive easement and right of way over and across the Well Pad and Access Road, for the purpose of drilling, equipping, producing, operating and maintaining one or more horizontal oil and/or gas wells whose surface locations are on the Well Pad, but that are completed in, and produce from… a Lease Unit and one or more other pooled units in which… [Bluebeck Ltd.] does not have an interest (collectively, "Cross Unit Wells" and each, a "Cross Unit Well")….

46.    Bluebeck Ltd., declined to enter into the Surface Use Agreement proposed by SWN Production in or about May 2019.

47.    Upon Bluebeck Ltd.'s refusal to enter into the proposed Surface Use Agreement, a representative of SWN Production stated to Bluebeck Ltd.'s transactional counsel that "She [i.e., Bluebeck Ltd.'s principal Julianne Beckerman] is not going to like what we do."

48.    Despite the refusal of Bluebeck Ltd., to execute the proposed Surface Use Agreement, SWN Production drilled Wells on the Leased Premises that serviced Units in which Bluebeck Ltd., did not have an interest.

49.    In or about May 2019, SWN Production also presented Bluebeck Ltd., with a proposed Amendment of Damage Receipt and Release providing, in pertinent part, that:

> Provision number 4 of the Release [requiring SWN Production to provide Bluebeck Ltd., with an alternate access road to the quarry

located on the Leased Premises] is hereby deleted in its entirety and will have no further force and effect and SWN [Production] has no liability related thereto…. Releasor agrees that SWN [Production] has no additional obligation at any time in the future to be responsible for the building of or maintenance of the road contemplated by that provision number 4 of the Release (the "Quarry Road").

50.     Bluebeck Ltd. declined to enter into the proposed Amendment of Damage Receipt and Release.

51.     On or about February 5, 2020, SWN Production caused to be recorded in the Recorder's Office of Susquehanna County, a "Declaration of Cross Unit Well" for a Well designated as Bluebeck 4H, constructed on the Leased Premises. A copy of the recorded "Declaration of Cross Unit Well" for Bluebeck 4H is attached hereto as Exhibit "E."

52.     SWN Production allocated production from Bluebeck 4H among three units (i.e., Bluebeck, Salt Lick Hunting Club and Sweeney) in the proportion that the length of completed lateral wellbore traversing each unit bears to the total completed lateral wellbore of the Well.

53.     On or about February 5, 2020, SWN Production caused to be recorded in the Recorder's Office of Susquehanna County, a "Declaration of Cross Unit Well" for a Well designated as Bluebeck 7H, constructed on the Leased Premises. A copy of the recorded "Declaration of Cross Unit Well" for Bluebeck 7H is attached hereto as Exhibit "F."

54.     SWN Production allocated production from Bluebeck 7H among two units (i.e., Bluebeck and Folkvard) in the proportion that the length of completed lateral wellbore traversing each unit bears to the total completed lateral wellbore of the Well.

55.     On or about February 5, 2020, SWN Production caused to be recorded in the Recorder's Office of Susquehanna County, a "Declaration of Cross Unit Well" for a Well designated as Bluebeck 8H, constructed on the Leased Premises. A copy of the recorded "Declaration of Cross Unit Well" for Bluebeck 8H is attached hereto as Exhibit "G."

56.     SWN Production allocated production from Bluebeck 8H among two units (i.e., Bienko and Folkvard) in the proportion that the length of completed lateral wellbore traversing each unit bears to the total completed lateral wellbore of the Well.

57.     On or about February 5, 2020, SWN Production caused to be recorded in the Recorder's Office of Susquehanna County, a "Declaration of Cross Unit Well" for a Well designated as Bluebeck 9H, constructed on the Leased Premises. A copy of the recorded "Declaration of Cross Unit Well" for Bluebeck 9H is attached hereto as Exhibit "H."

58.     SWN Production allocated production from Bluebeck 9H among two units (i.e., Bienko and Folkvard) in the proportion that the length of completed lateral

wellbore traversing each unit bears to the total completed lateral wellbore of the Well.

59.    The Lease does not provide for allocation of production from a Well based on the length of completed lateral wellbore.

60.    On November 19, 2021, Bluebeck Ltd., sent SWN Production the first in a series of notices of events of default pursuant to Lease section 26 (Event of Default; Termination), and followed with further notices of events of default on November 3, 2022, May 31, 2023 and July 10, 2023.  Copies of the Notices of Events of default are collectively attached as Exhibit "I."

61.    In a letter dated December 8, 2021, counsel for SWN Production responded to the November 19, 2021 notice of events of default by stating, among other things, that:

> … [M]y client reviewed the Royalty payments made to your client on all nineteen wells and determined that an error was made in determining that Royalty on three of those nineteen wells: Blue Beck 7H, Blue Beck 8H, and Blue Beck 9H. While those three wells were flagged internally to ensure that the Royalty payment was calculated according to the non-standard terms of the Lease, an error in the process occurred and the Royalty was not so calculated. That error has been corrected and the correct calculation process will be made on a going forward basis. The erroneously underpaid royalties amount to $31,164.44 and a check including that amount is being sent out today…. Other than the three wells identified above, SWN Production Company, LLC believes that all Royalty payments to-date have been made in accordance with the Sales Price as defined in the Lease. And, as noted previously, the error has been corrected so that going forward, Royalty payments for all nineteen wells should be made in accordance with the Sales Price as defined in the Lease….

11

62.    The check for "underpaid royalties" was drawn on a SWNCO checking account, and signed by Mr. Way and Mr. Giesler.

63.    On January 18, 2022, in the midst of contractually required dispute resolution procedures, SWN Production commenced an action in the United States District Court for the Middle District of Pennsylvania (Case 3:22-cv-00091-MEM) (the "Prior Action"), claiming, among other things, that Bluebeck Ltd., had threatened to terminate the Lease, and seeking a declaration that none of the Events of Default set forth in the Bluebeck Ltd.'s November 19, 2021 notice of events of default existed or had not been cured.

64.    Commencing in May 2023 and continuing to the present, the defendants have withheld all monthly payments of Royalties owed to plaintiff.

65.    On or about October 4, 2023, Bluebeck Ltd. transferred to Bluebeck Holdings all of its right, title and interest in and to the Leased Premises, together with all appurtenant mineral rights, and all causes of action, judgments, claims and demands arising thereunder or relating thereto.

66.    On or about October 4, 2023, Bluebeck Ltd., assigned all of its right, title and interest in and to the Lease to Bluebeck Holdings; and Bluebeck Holdings assumed all of the obligations of Bluebeck Ltd., as Lessor.

67.    On October 10, 2023, an Order was filed granting Bluebeck Ltd.'s motion to dismiss the Prior Action (Case 3:22-cv-00091-MEM-JFS, Doc. No. 76).

12

68.   In its decision granting the motion to dismiss, the Court found that Bluebeck Ltd., had not threatened to terminate the Lease as SWN Production erroneously claimed in its Complaint and First Amended Complaint.

## CALCULATION OF BLUEBECK'S ROYALTY

69.   Pursuant to the Lease, Bluebeck Ltd. was, and Bluebeck Holdings is entitled to receive, and SWN Production is obligated to pay, Royalties on gas produced, saved or sold from Wells on the Leased Premises, in amounts determined by multiplying (i) the Sales Price (as defined in the Lease), (ii) the volume of gas at the Wellhead, and (iii) the stated Royalty Share (i.e., twenty percent of one hundred percent). See Ex. "A," p. 14 of 20 (Definitions, "Royalty").

70.   The Lease also entitled Bluebeck Ltd., and entitles Bluebeck Holdings to its Royalty Share of any reimbursement for post-production costs and other benefits derived by SWN Production related to gas produced, saved or sold from the Leased Premises. See Ex. "A," Section 6(f).

## DEFAULT AS TO SALES PRICE AND VOLUME

71.   At all relevant times, SWN Production failed to calculate the Royalties due to Bluebeck Ltd. in accordance with the definition of Sales Price set forth in the non-standard terms of the Lease:

**"Sales Price," shall mean the price received by Lessee for its Oil and Gas sold in an arms-length transaction.**

**In the event Lessee elects to sell gas produced from the Leasehold to an affiliated party, then for purpose of computing royalty hereunder, the net proceeds after taxes shall be at least equivalent to the price paid for gas entering the Tennessee Gas Pipeline ("TGP") in North East Pennsylvania under a Zone 4 designation.** Lessor and Lessee acknowledge and agree that there is no published index price for TPG Zone 4 as of the effective date of this Lease. Lessor and Lessee further agree to use a price proxy for the TPG Zone 4 index until such time as a published index is established for TPG Zone 4, or any replacement zone, should TPG modify its description of such pipeline zone. The price proxy to be utilized hereunder shall be the Dominion South Point, located in the pricing table entitled "Appalachia" under the column heading "midpoint" as published in the "Daily Price Survey" ($MMBtu) portion of the McGraw-Hill publication, "Platts Gas Daily." Royalties shall continue to be paid on a monthly basis, but for purposes of computing royalties, the sale price of gas shall be calculated on a daily basis by multiplying the allocated sales volumes in MMBtu by the published gas index price per day.

Should the Plat Gas Daily index price used for royalty calculations hereunder no longer exist or no longer reasonably reflect market price in TGP Zone 4, Lessee shall survey the gas market and establish a revised price index. Royalty price index redeterminations shall occur no more than once every two (2) years.

(Emphasis added) See Ex. "A," p. 15 of 20 (Definitions, "Sales Price").

72.    In an email message dated January 14, 2022, SWNCO Land Manager,

Northeast Appalachia Division, Michael K. Bishop responded to a message from

Bluebeck Ltd., stating:

Your email indicates that SWN should look at the Sales Price definition under the lease, which we read to say that, for purposes of royalty calculations, the lessor's net proceeds after taxes shall be at least equivalent to the price paid for gas entering TGP Zone 4. In November 2021, our Accounting group conducted an audit and found that the TGP Zone 4 special pricing was not correctly flowing through to your checks on the Blue Beck 7H, 8H, and 9H. To my knowledge, this is the only

14

issue that we found that related to the Sales Price definition of the lease.  Since the corrective payment issued in December 2021, SWN has been compliant with this provision of the lease.  If there's something else that you'd like to bring to our attention, please let me know the specific issue, the dates, and the amount which you believe you are owed.

73.    In the Prior Action commenced four days later, on January 18, 2022,

SWN Production alleged in its Complaint and First Amended Complaint that:

Following receipt of Blue Beck's letter [i.e., Notice of Default], SWN Production attempted to address the generally-described alleged defaults. SWN Production researched the royalty payments on all nineteen wells at issue, from the commencement of production from each well. Based on this review, SWN Production determined that a small amount of payments on only three discrete wells were not made properly relative to the "Sales Price" as defined in the Lease's royalty provision. As a result, SWN Production immediately issued and sent a check to Blue Beck for the deficiency amount… curing the alleged default. [3]

74.    On April 27, 2023, while the Prior Action was pending, SWN

Production abruptly and falsely claimed that the Royalties were overpaid, and stated

that all Royalties payable to Bluebeck Ltd., would be withheld until the purported

overpayment was recouped.

75.    In an email message dated July 3, 2023, SWN Production's counsel

claimed that:

… SWN Production re-reviewed the language of the oil and gas lease at issue.  In doing so, SWN Production determined that it had made an error in how it had been calculating royalty payments to Blue Beck.  Specifically, SWN Production discovered that, "for purposes of

---

[3] The check was not issued by SWN Production. It was issued by SWNCO.

computing royalties," it mistakenly had not been calculating the "sales price … on a daily basis by multiplying the allocated daily sales volumes in MMBtu by the published gas index price per day." *Lease*, definition of "Sales Price" …. SWN Production remedied this mistake for going forward royalties.  It also went back and recalculated the royalties owed to Blue Beck using the daily sales volumes and daily index prices, fully prepared to tender immediately a check for any underpayment of those royalties.  Instead, SWN Production learned that there was an overpayment of royalties to Blue Beck of $395,739.98. Thus, as I explained to you in the April 27, 2023 call, beginning with the royalty payment in May of 2023, SWN Production began crediting future royalty payments (calculated "on a daily basis by multiplying the allocated daily sales volumes in MMBtu by the published gas index price per day") against this overpayment and will continue to do so until the overpayment has been eliminated.

76.    SWN Production's newly minted, erroneous and disingenuous interpretation of the definition of Sales Price relied upon a selective reading of a part of one sentence (the sentence is bolded below), taken out of context, that applied only to a method of calculating the Royalties due on affiliate sales, if any, when the index price is higher than the actual price received in an arm's length transaction:

> In the event Lessee elects to sell gas produced from the Leasehold to an affiliated party, then for purpose of computing royalty hereunder, the net proceeds after taxes shall be at least equivalent to the price paid for gas entering the Tennessee Gas Pipeline ("TGP") in North East Pennsylvania under a Zone 4 designation. … **Royalties shall continue to be paid on a monthly basis, but for purposes of computing royalties, the sale price of gas shall be calculated on a daily basis by multiplying the allocated sales volumes in MMBtu by the published gas index price per day.**

77.     SWN Production has not provided a monthly statement to Bluebeck Ltd., since May 2023 when it issued and then voided check number 60544069, and ceased to make further Royalty payments to Bluebeck Ltd.

**MANIPULATED SALES PRICE AND CONCEALED DEDUCTIONS**

78.     SWN Production claims that the gas produced from the Wells in which Bluebeck Ltd. had, and Bluebeck Holdings has Royalty Interests was sold to SES pursuant to a contractual agreement.

79.     At a deposition conducted in the Prior Action on May 9, 2023, Vice President and Controller O'Beirne was asked the following questions and gave the following answers:

Q.     Mr. O'Beirne, are you familiar with the term "weighted average sale price" or "WASP"?

A.     Yes, sir.

Q.     What is it?

A.     It's the price that Southwestern Energy Services paid Southwestern Production Company prior to January 1st of this year.

Q.     And what did it pay for?

A.     Repeat your question.

Q.     What did it pay – what did SES pay Southwestern Production for?

A.     It purchased the natural gas, oil and natural gas liquids produced.

Q.     And did something change on January 1st of this year with respect to payments from SES to Southwestern Production?

A.     Yes.

Q.     What changed?

17

A.      The contractual agreement between the two.

Q.      In what way did the contractual agreement change?

A.      Can you be more specific?

Q.      Well, what did you mean when you said a moment ago that the contractual agreement changed?

A.      The contractual agreement generally is now based on local index prices.

Q.      And before January 1st of this year, what was it based on?

A.      The weighted average sales price.

(See, O'Beirne Tr., page 26, line 8 – page 27, line 17 attached hereto as Exhibit "J").

80.     The contractual agreement and purported sale by SWN Production to SES are shams.

81.     At a deposition conducted in the Prior Action on September 21, 2022, SWNCO Marketing and Transportation Director Christopher J. Hutchison was asked the following questions and gave the following answers:

Q.      Mr. Hutchison, does SES buy gas from SWN Production Company?

A.      SES receives a fee from SWN Production Company in exchange for selling it[s] gas.

Q.      Would you explain what you mean by that.

A.      SES charges a five cent per MMBTU fee to SWN Production Company and remits all proceeds received from the sales of gas.

(See Hutchison Tr., p. 24, ln. 19 – p. 25, ln. 1, attached hereto as Exhibit "K").

82.     SWN Production and SES have the same management, headquarters, computer network, and email domain.

83.     Neither SWN Production nor SES have any employees.

18

84.    SES sells the gas produced by SWN Production in arm's length trades to counterparties.

85.    The net proceeds from the sale of gas were allocated to SWN Production by SWNCO employees via an accounting entry, without the transfer of funds.

86.    SWN Production purportedly changed the terms of its contractual agreement with SES effective January 1, 2023, to provide that, contrary to the definition of "Sales Price" set forth in the Lease, the Sales Price allocated to SWN Production (upon which Bluebeck Ltd.'s Royalty was calculated), would be based solely on local index prices, without taking into account the Sale Prices of gas to counterparties in arm's length transactions.  See Ex. "A," p. 15 of 20 (Definitions, "Sales Price").

87.    According to the deposition testimony of Mr. O'Beirne, commencing on January 1, 2023, SWN Production failed to calculate Bluebeck Ltd.'s Royalty payment on the higher of the price received in arm's length sales to counterparties that it made via SES, or the daily price paid for gas entering the Tennessee Gas Pipeline in Northeast Pennsylvania.

88.    SWNCO Marketing and Transportation Director Christopher J. Hutchison testified in a deposition conducted in the Prior Action on September 21,

2022 that he was not aware of any affiliate sales. (See, Ex. "K," p. 28, ln. 19 – p. 29, ln. 4).

89.    There have been no affiliate sales of the gas sold from the Leased Premises.

90.    All sales of gas in which Bluebeck Ltd., had a Royalty Interest were made by the SWNCO marketing department (i.e., wholly owned subsidiary, SES) in arm's length trades to counterparties.

91.    SWN Production failed to calculate and pay the Royalties due to Bluebeck Ltd., based on the price received in arms-length sales to counterparties.

92.    In a deposition conducted in the Prior Action on September 20, 2022, Mr. Bishop was asked the following question and gave the following answer:

Q.    And how about the way in which the royalty payment is made? What needed to be reviewed in the diligence that you testified about?

A.     Sure. So [Bluebeck Ltd., principal] Ms. Beckerman is what we call a special pricing owner, so that means that there's a very specific definition of sales price in the lease and we want to make sure that we pay her on the higher of the weighted average sales price and some certain index price, so we need to audit, ultimately, for diligence all of our past payments to make sure that they were paid properly.

(See, Bishop Tr., p. 32, ln. 6-16, attached hereto as Exhibit "L").

93.    In a deposition conducted in the Prior Action on January 19, 2023, Kristen Glymph, Senior Manager of the SWNCO Middle Office that is responsible for ensuring that revenues from counterparty trades are correctly reported to the

Accounting Department, was asked the following questions and gave the following

answers:

> Q.   Please walk me through the process by which the sale by SES is used
> to create the price that you report….
>
> A.   … So the sales are aggregated by pipe, by zone. They are then – the
> total revenues from those sales, less the expense that – the
> transportation expense from that pipeline to get to that zone is
> subtracted from that revenue and then divided by the total volume of
> sales for – I'm sorry – the total volume of sales to come up with a price.
> We call it the weighted average sales price, but it includes the
> transportations expense.
>
> Q.   You said that it takes into account transportation costs.
>
> A.   Yes.
>
> Q.   How about marketing costs?
>
> A.   After the weighted average price is done, so we come up with a price
> per location and then the 5 cent [per MMBTU] marketing fee is reduced
> from there.
>
> Q.   And is the product of those steps that you just described – is that the
> price that's reported to accounting?
>
> A.   Yes.

(See, Glymph Tr., p. 33 line 3- p. 34 ln. 7, attached hereto as Exhibit "M").

94.    The Lease does not provide for the use of a weighted average sales price

in calculating the Royalties payable to Bluebeck Ltd.

95.    The Lease defines the terms "Royalty," "Royalty Interest," "Lessor

Royalty," and "Royalty Share" as follows:

**"Royalty," "Royalty Interest," "Lessor Royalty" or "Royalty
Share," wherever used herein, shall mean twenty percent (20%) of
one hundred percent (100%) of the Sales Price of all Oil and Gas
produced, saved or sold from a Well on the Leased Premises or a**

**Unit in which a portion of the Leased Premises is located. The Sales Price for the Oil and Gas shall be determined at the Wellhead, adjusted for BTU content, without deduction for, gathering, separation, transportation, marketing, compression, dehydration, line loss, Production Taxes of whatever type and kind, compression fuel, pumping costs or other costs of the Lessee, of whatever type or kind, associated with the production of the Oil and Gas.** The volume and/or heating value of the Oil and Gas produced from a Well or the Leased Premises or a Unit in which a portion of the Lease Premises is located shall be measured before the Oil and Gas leaves the Leased Premises and/or Unit. The Oil and Gas from one Well shall not be commingled with Oil and Gas from another Well prior to its measurement unless the Wells are in the same Unit. The testing and accuracy of all measuring devices for a Well shall be assured in the Ordinary Course of Business but not less than annually where the production for a Well or group of Wells measured by the Measuring device is greater than 30,000 mcf/month and if less than 30,000 mcf/month then at least every two years.

Ex. "A," p, 14-15 of 20 (Definitions, "Royalty," "Royalty Interest," "Lessor's Royalty," "Royalty Share"). (Emphasis added).

96.    In the calculation and payment of Bluebeck Ltd.'s Royalty, SWN Production knowingly and improperly deducted transportation costs and marketing fees paid to SES.

97.    SWN Production fraudulently concealed deductions taken for marketing fees in the calculation of Royalties paid to Bluebeck Ltd., by indicating "zero" in the Marketing column set forth on the monthly Statements of Oil and Gas Payments sent to Bluebeck Ltd., via Unites States Mail and interstate wire communications.  A sample monthly statement is attached hereto as Exhibit "N."

98.    SWN Production fraudulently concealed deductions for transportation costs by omitting them from Bluebeck Ltd.'s monthly Statements of Oil and Gas Payments, despite having a deduction code for transportation (i.e., TRN) (see, Exhibit "N").

99.    At all relevant times, SWN Production failed to pay the Royalties due to Bluebeck Ltd., on the gas produced, saved or sold from Wells on the Leased Premises and the Units that include acreage of the Leased Premises, without deduction for the cost of transportation and marketing.

100.   At all relevant times, SWN Production failed to utilize the proper Sales Price in the calculation of the Royalties payable to Bluebeck Ltd., for gas produced, saved or sold from all 19 Wells in which it had a Royalty Interest.

101.   At all relevant times, SWN Production failed to use a daily Sales Price in calculating its Royalty payments to Bluebeck Ltd., and instead used a monthly price.

102.   On information and belief, in calculating the Royalties paid to Bluebeck Ltd., SWN Production did not measure the volume of gas produced at the Wellhead.

103.   SWN Production improperly based its calculation of Royalties payable to Bluebeck Ltd., on less than all of the gas produced from Bluebeck Wells 4H, 7H, 8H and 9H.

104.   The Lease requires payment of Royalties on all of the gas produced, saved or sold from Wells on the Leased Premises.

105.   SWN Production failed to use the daily Wellhead volumes of gas produced in calculating Bluebeck Ltd.'s Royalty.

## DEFAULT AS TO ROYALTY SHARE

106.   At all relevant times, SWN Production failed to properly calculate and pay to Bluebeck Ltd. its Royalty Share of the Sales Price of all gas produced, saved or sold from the Wells on the Leased Premises designated as Bluebeck 4H, Bluebeck 7H, Bluebeck 8H and Bluebeck 9H.

107.   SWN Production allocated Royalties on gas produced, saved or sold from Bluebeck 4H, Bluebeck 7H, Bluebeck 8H and Bluebeck 9H based on the length of the respective completed lateral wellbore.

108.   The Lease does not provide for the allocation of Royalties based on the length of a completed lateral wellbore.

109.   The Lease provides that the Royalty Share for all gas produced, saved or sold from a Well on the Leased Premises is twenty percent (20%) of one hundred percent (100%) of the Sales Price. See Ex. "A," p, 14-15 of 20 (Definitions, "Royalty," "Royalty Interest," "Lessor's Royalty," "Royalty Share").

## DEFAULT AS TO ROYALTY ON REIMBURSEMENTS OF POST-PRODUCTION COSTS

110.   Paragraph 6(f) (Royalty – Take or Pay) of the Lease provides, in pertinent part, that:

> **Lessor shall be entitled to its Royalty Share of any take or pay payment which directly relates to Oil and Gas produced, saved or sold from the Leased Premises in the same manner and subject to the same terms as said payments are made to Lessee, including but not limited to any reimbursement for post-production cost, bonuses, premiums, and all other benefits in cash, kind, or otherwise derived, received or realized by, or to inure to the benefit of Lessee, directly or indirectly from the barter, contribution, disposition, settlement, exchange, sale, severance or swap in place of any one or more Oil and Gas**, payable or deliverable to Lessor as Royalty, within sixty (60) days from and after the final consummation of each such barter, contribution, disposition, settlement, exchange, sale, severance, or swap. Lessor acknowledges and agrees that this provision shall not apply to any contracts, agreements or arrangements entered into by Lessee in the nature of a hedging transaction.

See Ex. "A," Section 6(f). (Emphasis added).

111.   SWN Production has realized reimbursements for transportation costs and marketing fees through its deductions in the calculation of Royalty payments for gas produced, saved or sold from the Leased Premises.

112.   SWN Production failed to pay Bluebeck Ltd.'s Royalty Share of reimbursements that it realized for transportation costs and marketing fees.

113.   SWN Production has realized reimbursements for compression and other post-production costs through its deductions from Royalty payments for gas produced, saved or sold from the Leased Premises.

114.   SWN Production failed to pay Bluebeck Ltd.'s Royalty Share of reimbursements that it realized for compression and gathering directly related to gas produced, saved or sold from the Leased Premises.

115.   On information and belief, SWN Production also failed to pay Bluebeck Ltd.'s Royalty Share of other benefits realized that were directly related to gas produced, saved or sold from the Leased Premises.

**FAILURES IN THE DEVELOPMENT OF LEASED PREMISES**

116.   SWN Production has failed to construct and maintain the quarry access road, implement noise abatement and scenic mitigations measures, and secure closure of the entrance gate as required by the Damage Receipt and Release (Ex. "C") and the Development Plan (Ex. "D") approved by Bluebeck Ltd., pursuant to the Lease. See, Ex. "A," Section 4 (Prosecution of Operations) and p. 13 of 20 (Definitions, "Development Plan").

117.   In October 2021 and November 2022, Bluebeck Ltd., demanded that SWN Production remedy its ongoing failure to construct and maintain the alternate quarry access road, but SWN Production has persisted in its failure to do so. See, e.g., Ex. "I."

118.   By failing to construct and maintain an alternate quarry access road, SWN Production obstructed Bluebeck Ltd.'s access to the quarry in a favorable market, prevented Bluebeck Ltd., from commercially exploiting its mineral rights expressly reserved in the Lease including, without limitation, its right to the sale of bluestone, and is continuing to prevent Bluebeck Holdings from doing so.

119.   The Lease provides that:

Lessee agrees to pay to Lessor the Value of any improvement or any Lessor's Leasehold Assets and Use destroyed, injured, or impaired as a result of the conduct of any Operations on the Leased Premises.  If Lessee replaces or repairs the asset destroyed, injured, or impaired, the amount due shall be the Value of the temporary loss, injury, or impairment of the asset, if any. Payment under this paragraph shall be due within 30 days of the determination of Value.

(See, Ex. "A," Section 18(c)).

120.   Bluebeck Holdings is entitled to recover from SWN Production the Value of the opportunity cost arising from its loss of access to the quarry on the Leased Premises.

121.   In addition, Bluebeck Holdings is entitled to measures that will abate the noise generated by operation of the compression facility that was constructed on the Leased Premises without first obtaining Bluebeck Ltd.'s approval of a modification of the Development Plan as required by the Lease; and to the installation and maintenances of screen plantings that will provide scenic mitigation. See Ex. "A" p. 13 of 20 (Definitions, "Development Plan").

122.   The Lease also provides, in pertinent part, that:

Lessee understands that the Leased Premises may be under and subject to one or more tax abatement programs and government subsidy programs governed by the Commonwealth of Pennsylvania or the Federal government, to include by way of example and not limitation, the Pennsylvania Clean and Green Program, CRP, EQIP, AG Easement and CREP, and Lessee, its successors and assigns, accepts responsibility for and agrees to reimburse Lessor for any rollback of and future increase in Lessor's real estate taxes and/or school taxes, recapture of government subsidies or payments resulting from or attributable to Lessee's actions and/or Operations on the Leased Premises. Lessee shall reimburse Lessor for and/or actually pay Lessor's real estate taxes and/or school taxes recaptured government payments, plus interest and penalties, if any, assessed on that portion of the Leased Premises excluded from such program as a result of Lessor's entering into this Lease and/or Lessee's operations on the Leased Premises….

(See Ex. "A," Section 18(a)).

123.   The construction by SWN Production of a compression facility caused the Leased Premises to lose its eligibility for tax abatement under the Pennsylvania Clean and Green Program.

124.   Despite demand by Bluebeck Ltd., for reimbursement, SWN Production has not reimbursed Bluebeck Ltd., or Bluebeck Holdings for increases in real estate taxes and school taxes arising from the construction of the compression facility on the Leased Premises.

125. Despite demands that the Leased Premises be kept safely secured as required by the Damage Receipt and Release (Ex. "C"), SWN Production has repeatedly failed to do so.

## FAILURE TO MAINTAIN INSURANCE NAMING PLAINTIFF AS ADDITIONAL INSURED

126. The failure by SWN Production to maintain required insurance as provided in the Lease is an Event of Default. See, Ex. "A," Section 26.

127. The Lease requires, among other things, that

Prior to the commencement of Operations, Lessee shall provide to Lessor a certificate evidencing Lessee's general liability insurance in an amount not less than One Million Dollars ($1,000,000) for a Vertical Well and Two Million Dollars ($2,000,000) per occurrence for a Horizontal Well, workman's compensation and disability insurance in amounts consistent with the requirements of the Commonwealth of Pennsylvania, general Environmental insurance of not less than Two Million Dollars ($2,000,000) per occurrence, and care, custody and control insurance in an amount not less than Five Million Dollars ($5,000,000) per occurrence. For so long as Lessee is conducting Operations on the Leased Premises, Lessee shall maintain such coverage in full force and effect and Lessor shall be named as an additional insured on a One Million Dollar ($1,000,000) policy for general liability insurance, Environmental insurance and care custody and control insurance. Lessee will also provide Lessor, prior to the commencement of any Operations on the Leased Premises, a certificate of insurance evidencing insurance in amounts not less than the amounts listed above. Each policy will be an occurrence policy and not a claims made policy, and shall not be cancelled without prior notice to Lessor.

See Ex. "A," Section 11(c) (Indemnification and Obligation to Pay Damages).

128.   On information and belief, SWN Production has failed to maintain the required insurance coverage in full force and effect for each and every period during which SWN Production has conducted operations on the Leased Premises.

129.   On information and belief, SWN Production has failed to cause Bluebeck Ltd. to be named as additionally insured on a One Million Dollar ($1,000,000) policy for general liability insurance; environmental insurance; and care custody and control insurance for each and every period during which SWN Production has conducted operations on the Leased Premises.

130.   On information and belief, as a result of the failure of SWN Production to comply with the insurance requirements set forth in the Lease, Bluebeck Ltd., and Bluebeck Holdings are exposed to potential claims for uninsured losses occurring in prior periods.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
(Federal Civil RICO)

131.   Plaintiff repeats, reiterates and realleges the allegations made in the foregoing paragraphs "1" through "130" as fully set forth herein.

132.   Chief Executive Officer Way, Chief Financial Officer Giesler, Vice President, Secretary and General Counsel Lacy, Senior Vice President-Northeast Appalachia Division Kelly, Vice President and Controller O'Beirne, and Accounting Director McIntosh perpetrated a multi-year corrupt enterprise by causing SWNCO

and its wholly owned subsidiaries, SWN Production and SES to engage in a pattern of fraudulent racketeering activities using the United States Mail and interstate wire communications.

133.   At all relevant times, Bluebeck Ltd., was, and Bluebeck Holdings is a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

134.   At all relevant times, the defendants, and each of them, were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

135.   The defendants formed an association-in-fact Enterprise within the meaning of 18 U.S.C. § 1961(4), for the common purpose of fraudulently underpaying Royalties; and for the common purpose of inducing Bluebeck Ltd., to accept fraudulently reduced, improper Royalty payments.

136.   The actions of the defendants were also taken for the common purposes of enriching SWNCO through the underpayment of Bluebeck Ltd.'s Royalties by SWN Production and the concealment of the underpayment.

137.   The defendants perpetrated a fraudulent scheme by engaging in contrived sales transactions between SWN Production and SES, for the purpose of concealing unauthorized deductions for transportation and marketing fees, thereby depriving Bluebeck Ltd., of Royalties to which it was entitled.

138.   The Enterprise was engaged in, and its activities affected interstate commerce within the meaning of 18 U.S.C. § 1962(c).

139.   Commencing in or about 2015, SWN Production used the United States Mail and interstate wire communications to send fraudulent monthly Statements of Oil & Gas Payments (later renamed "Revenue Statements") to Bluebeck Ltd., and continued doing so until May 2023.

140.   On information and belief, the defendants, and each of them, conducted, or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) in violation of 18 U.S.C. § 1962(c).

141.   SWN Production used gas produced from Wells in which Bluebeck Holdings has, and Bluebeck Ltd., had a Royalty Interest to fuel compression facilities, and failed to disclose its use of the gas on the monthly statements transmitted to Bluebeck Ltd., through interstate wire communications.

142.   SWN Production's use of gas produced from Wells on the Leased Premises or Units that include acreage of the Lease Premises, was not authorized by the Lease, by Bluebeck Holdings, or by Bluebeck Ltd.

143.   SWN Production knowingly and intentionally used erroneous Royalty Shares to calculate and pay Royalties to Bluebeck Ltd., on gas produced, saved or sold from the Wells on the Leased Premises designated as Bluebeck 4H, 7H, 8H and 9H, and reported the erroneous Royalty Shares (denoted as "RI") on the monthly statements sent to Bluebeck Ltd., via interstate wire communications.

144.   The monthly Statements of Oil & Gas Payments mailed and transmitted to Bluebeck Ltd., through interstate wire communications included columns for reporting deductions taken for Compression, Gathering, Treating, Marketing and "Other."

145.   The monthly Statements of Oil & Gas Payments mailed and transmitted via interstate communications to Bluebeck Ltd., falsely indicated that, in the calculation of Royalties payable to Bluebeck Ltd., "zero" deductions were taken for Marketing and "Other."

146.   The April and May 2023 Revenue Statements issued to Bluebeck Ltd., omitted any information regarding deductions for marketing, transportation and "other."

147.   SWN Production has not reported any information to Bluebeck Ltd., regarding gas production, sales volumes, pricing, or deductions since May 2023.

148.   In a deposition conducted in the Prior Action on January 19, 2023, Ms. Glymph testified that the price of gas sold by SES is reported to the Accounting Department after deduction of transportation and marketing costs. (See, Ex. "M," p. 33, ln. 3 – p. 34, ln. 7).

149.   On information and belief, in or about 2019, Vice President, Secretary and General Counsel Lacy confirmed to another royalty owner whose lease also

precluded deductions for transportation costs, that the royalty paid by SWN Production was calculated on sales prices after deductions for transportation costs.

150.   Parent company SWNCO and its two wholly owned subsidiaries, SWN Production and SES, share common management: (i) William Way, Carl Giesler and Chris Lacy are respectively listed as the CEO, CFO and Secretary of SWNCO on the SEC website; (ii) Messrs. Way, Giesler and Lacy are respectively listed as the CEO, CFO and Secretary of SWN Production on the Public Information Report filed with the Texas Comptroller of Public Accounts; and (iii) Messrs. Way, Giesler and Lacy are respectively listed as CEO, CFO and Secretary of SES on the Texas Franchise Tax Public Information Report filed with the Texas Secretary of State.

151.   United States Magistrate Judge Carlson described the relationship among SWNCO, SWN Production and SES in the matter of Jordan and Jordan v. Southwestern Energy Company and SWN Production Company, LLC, Case 3:20-cv-00414-RDM-MCC. Judge Carlson found that:

> The evidence proffered by the plaintiffs discloses a closely intertwined working relationship between SES and the named corporate defendants [i.e., SWN Production and its parent, SWNCO]. These companies share physical facilities, staff and management. Moreover, their financial dealings are intimately related and they play closely coordinated and overseen roles in the very hydrocarbon marketing and royalty transactions which are the gist of this litigation. Thus, SES and the named corporate defendants have a shared and symbiotic working relationship and financial interest in these transactions which describes a level of control that fully justifies compelled production of SES's records in this case.

34

152.   SWNCO has its principal place of business at 10000 Energy Drive, Spring, Texas, as do SWN Production and SES.

153.   Neither SWN Production nor SES have any employees; the business and affairs of the two wholly owned subsidiaries are conducted by employees of their common parent company, SWNCO.

154.   SWNCO, SWN Production and SES have a shared revenue stream in the very hydrocarbon marketing and Royalty transactions which are the gist of this litigation.

155.   SWNCO derives its income from the production and sale of oil and natural gas liquids and gas by its subsidiaries, SWN Production and SES.

**FRAUDULENT MARKETING "CONTRACTUAL AGREEMENT"**

156.   On information and belief, the contractual agreement between SWN Production and SES was entered into for the purpose of concealing the use of unauthorized deductions in the calculation of royalties payable to royalty owners.

157.   The contractual agreement between SWN Production and SES was a fraudulent manipulation aimed at circumventing the leasehold definitions of Royalty and Sales Price. See Ex. "A," p. 14 of 20 (Definitions, "Royalty") and p. 15 of 20 (Definitions, "Sales Price").

158.   Ms. Glymph testified that SES deducts both the cost of transportation and marketing fees before the sale proceeds are reported to the Accounting Department. (See Ex. "M" p. 33, ln. 3 – p. 34, ln.7).

159.   No funds were transferred between SES and SWN Production for the purported sales of gas.

160.   The purported sales of gas were completed by an inter-company accounting settlement.

161.   On information and belief, the contractual agreement between SWN Production and SES was made with the knowledge and active participation of Chief Executive Officer Way.

162.   On information and belief, the contractual agreement between SWN Production and SES was made with the knowledge and active participation of Chief Financial Officer Giesler.

163.   On information and belief, the contractual agreement between SWN Production and SES was made with the knowledge and active participation of Secretary Lacy.

164.   Prior to January 1, 2023, the purported contractual agreement between SWN Production and SES provided for a weighted average sale price based on the price received by SES in arm's length trades to counterparties, less the costs of transportation and marketing fees.

36

165.  In furtherance of their fraudulent scheme, the defendants caused a change in the contractual agreement between SWN Production and SES effective January 1, 2023.

166.  The January 1, 2023 change to the purported contractual agreement between SWN Production and SES provides for a price based on local indices (rather than the actual Sales Prices received by SES for the sale of gas to counterparties); the costs of transportation and marketing fees are then deducted.

167.  In a deposition conducted in the Prior Action on May 9, 2023, Mr. O'Beirne testified, that effective January 1, 2023 and continuing thereafter, the price reported by SES to SWN Production was no longer the weighted average sale price, but was instead the local index price.

168.  Mr. O'Beirne testified in the Prior Action that he is responsible for overseeing the accounting organization and land administration group.

169.  Mr. O'Beirne testified that he did not know who, if anyone verified the Sales Prices reported to SWN Production by SES.

170.  Mr. O'Beirne reports to Mr. Giesler.

171.  In a deposition conducted in the Prior Action on September 20, 2022, SWNCO Land Manager of the Northeast Appalachian Division Bishop stated that the Corporate Land Department functions to administer all lease payments,

obligations and royalty payments. (See, Bishop Tr., p. 9, ln. 3-4, attached hereto as Exhibit "O").

172.   Mr. Bishop testified that he reports to Senior Vice President-Northeast Appalachia Division Kelly. (See Ex. "O," p. 10, ln. 14-20).

173.   In a deposition conducted in the Prior Action on May 9, 2023, Mr. Kelly was instructed by SWN Production counsel not to answer the following question:

Q:   Who if anyone verifies the sale price reported to SWN Production for the sale of its gas?

(See Kelly Tr. p. 19, ln. 9- p. 20, ln. 2, attached hereto as Exhibit "P").

174.   On information and belief, the January 1, 2023 amendment to the contractual agreement between SWN Production and SES was made with the knowledge and active participation of SWNCO Senior Vice President-Northeast Appalachia Division John Kelly.

175.   On information and belief, the contractual agreement between SWN Production and SES was made with the knowledge and active participation of Controller O'Beirne.

176.   Mr. O'Beirne testified that Kristin Glymph would be the best person to talk to about the means by which the weighted average sales price was determined.

177.   In a deposition conducted in the Prior Action on January 19, 2023, more than two weeks after the purported change to the contractual agreement, Ms. Glymph testified that the Sale Prices reported by SES to SWN Production were based on the

actual prices of gas sold, and were not based on index prices. (See Glymph Tr. p. 22, ln 1-4, attached hereto as Exhibit "Q").

178.   Ms. Glymph testified that the weighted average sales prices reported by SES to the Accounting Department were reported net of deductions for the cost of transportation and a marketing fee. (See Ex. "M," p. 33, ln. 3 – p. 34, ln. 7).

179.   On January 18, 2023, Accounting Director Mcintosh testified that, among other things, he is responsible for the revenue group, which is responsible for receiving and booking sales, ensuring that the price received from SES is used in the calculation of revenue from the Wells, and paying royalty owners.

180.   Mr. Mcintosh testified that he didn't know who checks the price, and that he relies upon the honesty of the people at SES to accurately report the Sales Prices.

181.   On information and belief, the contractual agreement between SWN Production and SES was made with the knowledge and active participation of Mr. Mcintosh.

182.   In his January 18, 2023 deposition conducted in the Prior Action more than two weeks after the effective date of the purported change in pricing under the "contractual agreement" between SWN Production and SES, Mr. Mcintosh contradicted the testimony of Mr. O'Beirne, stating that the price received from SES is based on "an arm's length transaction in form," unless the actual Sales Price is

lower than a particular index, in which case the index price is used in connection

with leases that so provide:

> Q.   Who determines the price to use in calculating Blue Beck's royalties? Who in -- is your department responsible for determining the price to use in calculating Blue Beck's royalties?

> A.   My department is responsible for taking the price received and ensuring that it is used in the calculation of revenues from these wells.

> Q.   Who is responsible for determining whether to use the actual sales price or the index price? Who's responsible for that?

> A.   The -- within our system, we would -- we would input both and it would use the higher of.

(See Mcintosh Tr., p. 77, ln. 4-17, attached hereto as Exhibit "R").

183.   Mr. Mcintosh reports to Vice President and Controller O'Beirne.

184.   SWNCO's Form 10-Q filed with the United States Security and

Exchange Commission for the quarterly period ended September 30, 2023 provides,

in pertinent part, that:

> ***Revenues from Contracts with Customers*** …

> *Marketing.* The Company, through its marketing affiliate, generally markets natural gas, oil and NGLs for its affiliated E&P companies as well as other joint owners who choose to market with the Company. In addition, the Company markets some products purchased from third parties. Marketing revenues for natural gas, oil and NGL sales are recognized when control of the product is transferred to the customer at a designated delivery point. The pricing provisions of the Company's contracts are primarily tied to market indices with certain adjustments based on factors such as delivery, quality of the product and prevailing supply and demand conditions. Under the Company's marketing contracts, the delivery of each unit of natural gas, oil and NGLs represents a separate performance obligation, and revenue is recognized at the point in time when the performance obligations are

fulfilled. Customers are invoiced and revenues are recorded each month as natural gas, oil and NGLs are delivered, and payment terms are typically within 30 to 60 days of control transfer. Furthermore, consideration from a customer corresponds directly with the value to the customer of the Company's performance completed to date. As a result, the Company recognizes revenue in the amount for which the Company has a right to invoice and has not disclosed information regarding its remaining performance obligations.

185.   Contrary to the Form 10-Q, SES is not an affiliate of SWNCO, it is a wholly owned subsidiary.

186.   The veracity of the SWNCO Form 10-Q was certified by Director and Chief Executive Officer William J. Way, and by Chief Financial Officer Carl Geisler, Jr.

187.   On information and belief, Mr. Way and Mr. Giesler personally participated in the concealment of the fraudulent enterprise.

188.   In their certifications of the SWNCO Form 10-Q for the period ended September 30, 2023, Mr. Way and Mr. Giesler stated that:

> … I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors… [a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting

189.   On information and belief, Mr. Way and Mr. Giesler failed to disclose the fraudulent marketing contractual agreement between SWN Production and SES to the SWNCO auditors and audit committee of its board of directors.

190.   Mr. Way certified the SWNCO Form 10-K for the year ended December 31, 2015 and Forms 10-Q and 10-K for all reporting periods thereafter.

191.   Mr. Geisler certified the SWNCO Form 10-K for the year ended December 31, 2021 and Forms 10-Q and 10-K for all reporting periods thereafter.

### SWN PRODUCTION'S BAD FAITH ATTEMPT TO INTIMIDATE AND COERCE PLAINTIFF BY WITHHOLDING ALL ROYALTIES

192.   In or about April 2023, in an apparent attempt to extort Bluebeck Ltd., to surrender its claims for unpaid Royalties, SWN Production stopped paying all Royalties to Bluebeck Ltd.

193.   In the July 3, 2023 email message of SWN Production's counsel, and in counsel's letter of July 28, 2023, SWN Production disingenuously changed its interpretation of the leasehold definition of Sales Price, falsely claiming that the Royalties payable to Bluebeck Ltd., had been overpaid, and that its Royalties should have been based on the index price, even when the gas was sold to counterparties at a higher price.

194.   The last Royalty check received by Bluebeck Ltd., was dated April 25, 2023.

195.   SWN Production has not issued a Royalty check to Bluebeck Ltd. since May 25, 2023, when it issued and subsequently voided check number 60544069.

196.   SWN Production has not provided Bluebeck Ltd. with a Revenue Statement since May 2023, when it provided a Revenue Statement in connection with voided check number 60544069, dated May 25, 2023.

197.   The defendants, and each of them, have violated the RICO Act by associating, combining and establishing an association for the purpose of denying Bluebeck Ltd., and Bluebeck Holdings the royalties and benefits due pursuant to the Lease and by employing the United States Mails and wire electronic communication in furtherance of their scheme.

198.   Pursuant to 18 U.S.C. § 1964(c), the defendants are jointly and severally liable to Bluebeck Holdings for treble damages, and the costs of this litigation, including reasonable attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
(Conspiracy to Violate the RICO Act)

199.   Plaintiff repeats, reiterates and realleges the allegations made in the foregoing paragraphs "1" through "198."

200.   The RICO Act, 18 U.S.C. § 1962(d), provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

201.   The defendants, and each of them, have violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).

202.   The defendants, and each of them, committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to accomplish the objects thereof, including but not limited to the acts set forth herein.

203.   As a direct and proximate result of the overt acts and predicate acts of the defendants in furtherance of their violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Bluebeck Ltd., and Bluebeck Holdings have been and continue to be injured in their business and property in an amount to be determined at trial; and such injuries include, but are not limited to, fraudulent underpayment of Royalties, as a direct, proximate and foreseeable result of the scheme.

204.   Pursuant to 18 U.S.C. § 1964(c), the defendants are jointly and severally liable to Bluebeck Holdings for treble damages, and the costs of this litigation, including reasonable attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
(State Law Civil Conspiracy)

205.   Plaintiff repeats, reiterates and realleges the allegations made in the foregoing paragraphs "1" through "204."

206.   The defendants conspired and combined with each other to make wrongful deductions from the Royalties payable to Bluebeck Ltd., and achieved a meeting of the minds through express or tacit agreement on the object or course of

action of the conspiracy, including depriving Bluebeck Ltd., of its right to Royalties pursuant to the Lease.

207.   Defendants have formed and operated a civil conspiracy to convert plaintiff's property, performing as a part of the conspiracy numerous overt acts in furtherance of the common design, including one or more unlawful acts, or one or more lawful acts performed to accomplish an unlawful goal.

208.   The actions of the defendants were taken for the common purposes of enriching SWNCO through the underpayment of Bluebeck Ltd.'s Royalties by SWN Production and the concealment of the underpayment.

209.   As a direct and proximate result of the wrongful conduct of defendants, Bluebeck Holdings has suffered and continues to suffer damages.

210.   Bluebeck Holdings is entitled to recover from defendants compensatory and punitive damages, and the costs of this litigation, including attorneys' fees.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST SWN PRODUCTION AND SWNCO
(Common Law Fraud)

211.   Plaintiff repeats, reiterates and realleges the allegations made in the foregoing paragraphs "1" through "210."

212.   Defendants issued fraudulent monthly statements to Bluebeck Ltd., that concealed their use of gas, concealed deductions taken for Marketing and "Other," and falsely misrepresented the Sales Prices and Bluebeck Ltd.'s Royalty Share.

213.   Statements of Oil and Gas Payments (later renamed "Revenue Statements") were knowingly issued by SWNCO employees through its wholly owned and controlled instrumentality, SWN Production, for the purpose of inducing Bluebeck Ltd., to rely upon them.

214.   Bluebeck Ltd., relied upon the fraudulent statements to its detriment by receiving and accepting the underpayment of its Royalties.

215.   As a direct and proximate result of its reliance on defendants' fraudulent misrepresentations, Bluebeck Holdings has suffered and continues to suffer damages.

216.   Bluebeck Holdings is entitled to recover from defendants compensatory and punitive damages, and the costs of this litigation, including attorneys' fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST SWN PRODUCTION
(Breach of Contract)

217.   Plaintiff repeats, reiterates and realleges the allegations made in the foregoing paragraphs "1" through "216."

218.   SWN Production breached its obligations under the Paid-Up Oil and Gas Lease by (i) its failure to properly pay Royalties and other amounts due in accordance with the terms of the Paid-Up Oil and Gas Lease, (ii) its failure to construct and maintain a certain quarry access road in accordance with the Development Plan approved by Bluebeck Ltd., (iii) its failure to name Lessor as

additionally insured on a One Million Dollar ($1,000,000) occurrence policy for general liability insurance, environmental insurance and care, custody and control insurance for each and every period during which Lessee has conducted operations on the Leased Premises, (iv) its failure to implement measures to abate the noise generated by operation of the compression facility, (v) its failure to install and maintain screen plantings to provide scenic mitigation, (vi) its failure to secure the Leased Premises, and (vii) its failure to reimburse Bluebeck Ltd., or Bluebeck Holdings for increases in real estate taxes and school taxes arising from the construction of the compression facility.

219.   As a direct and proximate result of defendant SWN Production's wrongful breach of its obligations under the Lease, Bluebeck Holdings has suffered and continues to suffer damages.

220.   Bluebeck Holdings is entitled to recover compensatory damages, and the costs of this litigation, including attorneys' fees.

### AS AND FOR A SIXTH CAUSE OF ACTION
### AGAINST SWN PRODUCTION, SES AND SWNCO
(Conversion)

221.   Plaintiff repeats, reiterates and realleges the allegations made in the foregoing paragraphs "1" through "220."

222.   Bluebeck Ltd., was entitled to receive Royalties calculated and paid pursuant to the terms of the Lease.

223.   Defendants wrongfully and intentionally caused plaintiff's Royalties to be underpaid.

224.   The defendants collected, withheld and retained the Royalties payable to Bluebeck Ltd., through agreements among themselves made without the consent of Bluebeck Ltd.

225.   Defendants intended to permanently deprive plaintiff of the Royalties that they wrongfully withheld.

226.   As a direct and proximate result of defendants' wrongful conversion, Bluebeck Holdings has suffered and continues to suffer damages.

227.   Bluebeck Holdings is entitled to recover compensatory and punitive damages, together with the costs of this litigation, including reasonable attorneys' fees.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### AGAINST SWNCO
(Unjust Enrichment)

228.   Plaintiff repeats, reiterates and realleges the allegations made in the foregoing paragraphs "1" through "227."

229.   The income derived by wholly owned subsidiaries SWN Production and SES from the actions complained of inured to the benefit of their common parent, SWNCO.

230.   SWNCO is chargeable with knowledge of the activities of its instrumentalities, SWN Production and SES, conducted by SWNCO employees, in furtherance of their common purpose.

231.   SWNCO was unjustly enriched at the expense of Bluebeck Ltd., and Bluebeck Holdings.

232.   Bluebeck Holdings is entitled to recover from defendants an amount equal to the benefits unjustly retained by them, with interest, and the costs of this litigation, including attorneys' fees.

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST SWN PRODUCTION AND SWNCO
(Accounting)

233.   Plaintiff repeats, reiterates and realleges the allegations made in the foregoing paragraphs "1" through "232."

234.   Bluebeck Holdings has a specific, identifiable property interest in the amount by which Bluebeck Ltd.'s Royalties were underpaid.

235.   The income derived by wholly owned subsidiaries SWN Production and SES from the actions complained of inured to the benefit of their common parent, SWNCO.

236.   SWNCO would be unjustly enriched if it were permitted to retain the amounts by which Bluebeck, Ltd.'s Royalties were underpaid.

237.   The amounts by which Bluebeck Ltd.'s Royalties were underpaid are held by SWNCO in constructive trust.

238.   SWN Production has not accounted to Bluebeck Ltd., or Bluebeck Holdings for the Royalties that it has withheld since May 2023.

239.   SWN Production has not accounted to Bluebeck Ltd., or Bluebeck Holdings for marketing and transportation costs improperly deducted from the Sale Prices upon which its Royalty was calculated.

240.   SWN Production has not accounted to Bluebeck Ltd., or Bluebeck Holdings for reimbursements that it realized for compression and other post post-production costs in connection with gas produced, saved or sold from Wells on the Leased Premises.

241.   SWN Production has not accounted to Bluebeck Ltd., or Bluebeck Holdings for reimbursements, bonuses, premiums, and all other benefits in cash, kind or otherwise, derived, received or realized by, or that inured to the benefit of SWN Production directly or indirectly from the barter, contribution, disposition, settlement, exchange, sale, severance or swap in place of gas produced, saved or sold from Wells on the Leased Premises.

242.   SWN Production has not accounted to Bluebeck Ltd., nor Bluebeck Holdings for Royalties calculated at the required Royalty Share of 20% of 100% of

the Sales Price of gas produced, saved or sold from Wells on the Leased Premises designated as Bluebeck 4H, 7H, 8H and 9H.

243.   SWN Production has not accounted to Bluebeck Ltd., nor Bluebeck Holdings for Royalties payable on gas produced, saved or sold from Units that include acreage of the Leased Premises.

244.   SWN Production has not accounted to Bluebeck Ltd., nor Bluebeck Holdings for the volumes of all gas produced from the 19 Wells in which Bluebeck Holdings has, and Bluebeck Ltd., had an interest.

245.   SWN Production has not accounted to Bluebeck Ltd., nor Bluebeck Holdings for its use of fuel produced from the 19 Wells in which Bluebeck Holdings has, and Bluebeck Ltd., had an interest.

246.   SWNCO has not accounted to Bluebeck Ltd., nor Bluebeck Holdings for the revenue that it derived from the underpayment of Bluebeck Ltd.'s Royalties by SWN Production.

247.   Bluebeck Holdings is entitled to a judgment and order directing that SWN Production and SWNCO promptly furnish Bluebeck Holdings with an accounting, together with the costs of this litigation, including reasonable attorneys' fees.

## SUMMARY OF RELIEF SOUGHT

WHEREFORE, Bluebeck Holdings prays that this Court grant it relief in the form of a judgment and order:

(i)    on the First Cause of Action against all defendants for Federal Civil RICO violations, awarding treble damages in an amount to be determined at trial, but not less than $225,000.00;

(ii)    on the Second Cause of Action against all defendants for Conspiracy to Violate the RICO Act, awarding treble damages in an amount to be determined at trial, but not less than $225,000.00;

(iii)    on the Third Cause of Action against all defendants for State Law Conspiracy, awarding compensatory damages in an amount not less than $75,000.00, and punitive damages in an amount to be determined at trial;

(iv)    on the Fourth Cause of Action against defendants SWN Production and SWNCO for Common Law Fraud, awarding compensatory damages in an amount not less than $75,000.00, and punitive damages in an amount to be determined at trial;

(v)    on the Fifth Cause of Action against defendant SWN Production for breach of contract, awarding compensatory damages in an amount to be determined at trial, but not less than $75,000.00; and directing specific performance of the insurance requirement of Lease Section 11(c), and of the provisions of the Damage

Receipt and Release and the Development Plan requiring construction and maintenance of the quarry access road, implementation of noise abatement and scenic mitigation measures, and securing the closure of the entrance gate;

(vi)    on the Sixth Cause of Action against defendants SWN Production, SES and SWNCO for Conversion, awarding compensatory damages in an amount to be determined at trial, but not less than $75,000.00;

(vii)   on the Seventh Cause of Action against defendant SWNCO for Unjust Enrichment, awarding compensatory damages in an amount to be determined at trial, but not less than $75,000.00;

(viii)  on the Eighth Cause of Action against defendants SWN Production and SWNCO for an Accounting, directing that SWN Production and SWNCO promptly furnish Bluebeck Holdings with an accounting; and

(ix)    Bluebeck Holdings further requests that this Court require all defendants to pay Bluebeck Holdings prejudgment interest pursuant to the Oil and Gas Lease Act of 1979 (P.L. 183, No. 60) as amended, the costs incurred in this litigation, including reasonable attorneys' fees, costs of investigation and litigation pursuant to the Lease; that this Court require SWN Production to pay Bluebeck Holdings its fees costs and expenses incurred in this litigation and incurred by Bluebeck Holdings and Bluebeck Ltd., prior to its commencement pursuant to the

Lease; and that this Court grant such other and further relief as it deems just and proper.

RESPECTFULLY SUBMITTED:

ROSENN, JENKINS & GREENWALD, LLP

BY:/S/ROBERT D. SCHAUB, ESQUIRE
    ROBERT D. SCHAUB, ESQUIRE
    Attorney I.D. No. 42466
    ROBERT L. GAWLAS, ESQUIRE
    Attorney I.D. No. 323299
    Cross Creek Pointe
    1065 Highway 315, Suite 200
    Wilkes-Barre, PA 18702
    (570) 826-5652 – telephone

LEVENTHAL, MULLANEY & BLINKOFF, LLP

BY:   STEVEN G. LEVENTHAL, ESQUIRE
    N.Y. Attorney I.D. No. 1713593
    15 Remsen Avenue
    Roslyn, NY 11576
    (516) 484-5440 – telephone
    *To be admitted pro hac vice*

Attorneys for Plaintiff, BLUEBECK HOLDINGS LTD.