UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLUEBECK HOLDINGS, LTD, <br><br> Plaintiff <br><br> v. <br><br> SWN PRODUCTION COMPANY, LLC, et al., <br><br> Defendants. | CIVIL ACTION NO. 3:23-CV-2095 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion to transfer pursuant to 28 U.S.C. § 1404(a) filed by Defendants SWN Production Company, LLC ("SWN Production"), Southwestern Energy Company ("SEC"), and SWN Energy Services Company, LLC ("SWN") (the "Corporate Defendants") and Defendants William J. Way ("Mr. Way"), Carl Giesler, Jr. ("Mr. Giesler"), Christopher W. Lacy ("Mr. Lacy"), John Kelly ("Mr. Kelly"), Colin O'Beirne ("Mr. O'Beirne"), and Robert T. McIntosh ("Mr. McIntosh") (collectively, the "Individual Defendants"), (collectively with Corporate Defendants, "Defendants") on March 1, 2024. (Doc. 34). Defendants request that the current matter be transferred to the United States District Court for the Southern District of Texas. (Doc. 34, at 1). For the reasons provided herein, Defendants' motion to transfer (Doc. 34) is **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On December 18, 2023, Plaintiff Bluebeck Holdings, LTD ("Plaintiff") commenced this action against Defendants by filing a complaint asserting the following claims: a federal Racketeer Influenced and Corrupt Organizations (RICO) Act claim, a conspiracy to violate the federal civil RICO Act claim, and a common law conspiracy claim against all Defendants (First, Second and Third Causes of Action); a common law fraud claim against SWN

Production and Southwestern (Fourth Cause of Action); a breach of contract claim against SWN Production (Fifth Cause of Action); a common law conversion claim against all Corporate Defendants (Sixth Cause of Action); an unjust enrichment claim against Southwestern (Seventh Cause of Action); and an accounting claim against SWN Production and Southwestern (Eighth Cause of Action). (Doc. 1). On March 1, 2024, the Individual Defendants filed a motion to dismiss, the Corporate Defendants filed a motion to dismiss, and all Defendants filed a joint motion to transfer venue. (Doc. 27; Doc. 33; Doc. 34).

According to the Complaint, Plaintiff is a Colorado corporation, with a principal place of business in New York. (Doc. 1, ¶ 9). It is a resident of Colorado and New York. (Doc. 1, ¶ 10). All Corporate Defendants are Delaware corporations with their principal places of business in Texas. (Doc. 1, ¶¶ 12-19). All Individual Defendants are also residents of Texas. (Doc. 1, ¶¶ 20-31).

Plaintiff owns 213.8 acres of land in Susquehanna County, Pennsylvania ("Leased Property") that is subject to a September 23, 2009 Paid-Up Oil and Gas Lease (the "Lease"). (Doc. 1, ¶¶ 11, 35; Doc. 1-1). On or about May 1, 2014, the Lease was amended ("Amended Lease"). (Doc. 1, ¶ 38; Doc. 1-2). Plaintiff alleges that presently, and at all times relevant to this matter, it or its assignor, Bluebeck Ltd., has been the lessor of the Leased Property and SWN Production has been the lessee. On or about August 18, 2014, Plaintiff alleges that it entered into agreements ("Well Agreements") with SWN Production, under its previous name, SEPCO-Texas, to develop wells on the Leased Property for resource extraction. (Doc. 1, ¶¶ 40-44). SWN Production built eleven wells pursuant to the Well Agreements. (Doc. 1, ¶¶ 43-44). Pursuant to the Amended Lease, Plaintiff is entitled to receive royalties on gas produced, saved, or sold from wells on the Leased Property. (Doc. 1, ¶ 69). In or about May

2

2019, SWN Production attempted to enter into another agreement with Bluebeck Ltd. to construct additional wells, which would be partially located in land in which Bluebeck Ltd. did not have an interest. (Doc. 1, ¶ 45). After Bluebeck Ltd. declined to sign those agreements, SWN Production commenced development of the additional wells. (Doc. 1, ¶¶ 46-58). As a result, the Amended Lease did not provide for allocation of production from the additional wells. (Doc. 1, ¶ 59). On November 19, 2021, Bluebeck Ltd. sent a notice of events of default to SWN Production due to underpaid royalties related to all the wells. (Doc. 1, ¶ 60). All underpaid royalties were drawn on a SEC checking account, located in Texas, by Mr. Way and Mr. Giesler. SWN Production responded that all royalties, including those for the additional wells, "should be made in accordance" with the Amended Lease. (Doc. 1, ¶ 62-63). On January 18, 2022, SWN Production commenced an action in this Court seeking a declaration that Plaintiff's threat to terminate the Amended Lease was based upon events that did not occur or had been cured. (Doc. 1, ¶ 63). That suit was dismissed on October 10, 2023. (Doc. 1, ¶ 67-68).

Beginning in May 2023, and through the present, Corporate Defendants have withheld royalties. (Doc. 1, ¶ 64). On or about October 4, 2023, Bluebeck Ltd. transferred all its right, title, and interest in the Leased Property and the Amended Lease to Plaintiff, along with all related rights, causes of action, judgments, claims, and demands arising thereunder or relating thereto. (Doc. 1, ¶ 65). According to the Complaint, SWN Production receives a fee from SWN pursuant to a contractual agreement to obtain gas. (Doc. 1, ¶¶ 78-84). SWN then sells the gas to counterparties. (Doc. 1, ¶ 84). Sales to counterparties were made by SEC, a wholly owned subsidiary of SWN. (Doc. 1, ¶ 90). Due to changed terms regarding the contractual agreement, SWN Production began to receive higher revenue from its sales of gas to

counterparties. (Doc. 1, ¶¶ 91-105). Plaintiff alleges that those higher revenues were not reflected properly in royalty payments to it, creating royalty underpayments. (Doc. 1, ¶¶ 91-105).

In sum, Plaintiff alleges that Defendants "engaged in a scheme to unlawfully enrich themselves at plaintiff's expense by fraudulently depriving [P]laintiff of [r]oyalties that it was entitled to receive." (Doc. 1, ¶ 1). Plaintiff alleges that SWN Production conspired with SEC and SWN, its corporate parent and affiliate, as well as its own officers and employees, to engage in the allegedly unlawful conduct. (Doc. 1, ¶¶ 78-130). Plaintiff alleges that all Individual Defendants were involved in the illegal activities and know about and participated in them. (Doc. 1, ¶¶ 62, 132, 161-163, 174-175, 181-189).

On March 1, 2024, Defendants filed a join motion to transfer the action to the Southern District of Texas. (Doc. 34). On March 15, 2024, Defendants filed their brief in support. (Doc. 39). On April 30, 2024, Plaintiff filed its brief in opposition to the motion to transfer. (Doc. 45). On May 28, 2024, Defendants filed their reply brief. Accordingly, this matter has been fully briefed and is now ripe for adjudication. (Doc. 53).

## II.  LEGAL STANDARD

A court may transfer venue to any other district court where the civil action might have been brought if it serves the interests of justice and the convenience of the parties. 28 U.S.C. § 1404(a). Although the district court is given the ultimate discretion in transferring venue, the exercise of this discretion should not be liberal. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). A court adjudicating a motion pursuant to 28 U.S.C. § 1404(a) must first determine whether the proposed venue is appropriate—that is, a district court can only transfer the action to a district or division "where [the case] might have been brought." 28

4

U.S.C. § 1404(a) ; *see also High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 491 (M.D. Pa. 2005). If transfer to the proposed district would satisfy this statutory limitation, the court must then balance several factors. "While there is no definitive list of factors, courts generally consider the following: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative court congestion in the competing courts; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; (12) and the familiarity of the trial judge with the applicable state law." *High River*, 353 F. Supp. 2d at 491 (citing *Jumara v. State Farms Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)). The first six factors are considered the "private interest factors," while the last six factors are the "public interest factors." *See Petroleum Serv. Co. v. Santie's Wholesale Oil Co.*, No. 3:23CV1500, 2024 WL 816619, at *3-8 (M.D. Pa. Feb. 27, 2024).

The moving party bears the burden of showing that these factors warrant transfer. *Jumara*, 55 F.3d at 879. However, the moving party "is not required to show 'truly compelling circumstances for ... change ... [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.' " *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)).

5

**III.   DISCUSSION**

Defendants contend that the Southern District of Texas is the proper venue for this matter since this action "might have been brought" in the Southern District of Texas and the balance of the *Jumara* public and private interest factors weigh in favor of transfer because the convenience of parties and witnesses and the interests of justice would be best served by transfer. (Doc. 39, at 11, 14); *see* 55 F.3d at 879-80. In opposition, Plaintiff contends that the Leased Property is in Pennsylvania, making venue in Pennsylvania proper, and the balance of the relevant factors favors venue in this Court. (Doc. 45, at 9-10).

  A.   THIS ACTION MIGHT HAVE BEEN BROUGHT IN THE SOUTHERN DISTRICT OF TEXAS

If a plaintiff would have had a right to bring suit in the proposed transferee district at the commencement of the action, "independently of the wishes of [the] defendant," then the transferee district is a district where the action "might have been brought." *Hoffman v. Blaski,* 363 U.S. 335, 344 (1960). Thus, in order to prevail on a motion to transfer venue under § 1404(a), the moving party must demonstrate that venue, personal jurisdiction, and subject matter jurisdiction would all have been proper in the proposed transferee district. *Hoffman,* 363 U.S. at 344; *Shutte ,* 431 F.2d at 24.

Here, Defendants contend that "venue is proper in the Southern District of Texas under Section 1391(b)(1), because the Corporate Defendants reside in that district, and all Defendants are residents of Texas" and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Texas. (Doc. 39, at 12-13). Defendants additionally argue that the Southern District of Texas has personal and subject matter jurisdiction in this action because all Defendants are domiciled in Texas and the Court therefore has general jurisdiction over all parties and these claims. (Doc. 39, at 14). Plaintiff does not respond to

6

this argument in its brief in opposition, and thus seems to concede that the action "might have been brought" in Texas. (Doc. 45). This Court agrees that because all Defendants are domiciled in Texas and the alleged underpayment of royalties occurred in Texas, the action "might have been brought" in the Southern District of Texas. *See LWR Time, Ltd. v. Fortis Watches, Ltd.,* No. 3:10-CV-1923, 2012 WL 2905187, at *8 (M.D. Pa. July 16, 2012) ("the omission to remit payment is an 'event or omission' that provides for proper venue in the district in which the payor is located.") (citing *Cottman Transmission Sys. Co. v. Martino*, 36 F.3d 291, 295 (3d Cir.1994); *Shamrock Materials v. Alliance Cos.*, No. 05–5736, 2006 WL 1892722, at *3 (E.D. Pa. July 10, 2006)); *see also Hoffman, 363 U.S. at 344.*

B. THE PRIVATE INTEREST *JUMARA* FACTORS

Having found that the action might have been brought in the Southern District of Texas, the Court now considers the private interest factors as laid out in *Jumara.* 55 F. 3d at 879. The private interest factors relate to the "convenience of the parties and witnesses," as well as "'all other practical problems that make trial of a case easy, expeditious and inexpensive[.]'" *Petroleum Serv. Co.,* 2024 WL 816619, at *3 (quoting *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 n.7 (3d Cir. 2017)).

1. **Deference to Plaintiff's Choice of Forum**

The first private interest factor relates to the plaintiff's choice of forum. *Petroleum Serv. Co.,* 2024 WL 816619, at *3. Defendant argues that Plaintiff's forum choice of the Middle District of Pennsylvania, which is typically "a paramount consideration in any determination of a transfer request," should be given "less weight" here because Plaintiff is not a Pennsylvania resident, and this District is not "the situs of the occurrence upon which the suit is based.". (Doc. 39, at 15-16); *see High River,* 353 F. Supp. 2d at 498–99; *Shutte,* 431 F.2d at

7

25. Plaintiff acknowledges that its choice of venue is given less weight as a non-resident of this District but argues that it should still be entitled to great weight, since a substantial part of the events or omissions giving rise to the claim occurred in this District. (Doc. 45, at 11).

The Court finds that the first factor, Plaintiff's choice of forum, is neutral. While this factor is usually one of paramount importance, the weight courts are instructed to give to a plaintiff's forum choice is substantially reduced when the plaintiff is not a resident of its choice forum. *Regmund v. Talisman Energy USA, Inc.*, No. CV 16-711, 2016 WL 5794227, at *5 (W.D. Pa. Aug. 31, 2016), *report and recommendation adopted*, No. 2:16CV711, 2016 WL 5720841 (W.D. Pa. Sept. 30, 2016) ("The Supreme Court has also held that: 'When the plaintiff's choice is not its home forum ... the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable.'" (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)); *see also High River*, 353 F. Supp. 2d at 498–99. Further, some courts in this Circuit have concluded that the increased emphasis on a plaintiff's forum choice is a legal error. *Regmund*, 2016 WL 5794227, at *5 (finding that the presumption in favor of a plaintiff's forum choice is flawed argument because the first factor is based on a case that "was decided under the doctrine of *forum non conveniens*" and "The Supreme Court has made clear that: 'District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*.'") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981)) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("Thus, the district court, in requiring [the defendant] to show that the § 1404(a) factors must substantially outweigh the plaintiffs' choice of venue, erred by applying the stricter *forum non conveniens* dismissal standard and thus giving inordinate weight to the

8

plaintiffs' choice of venue."). Plaintiff is a Colorado corporation, with a principal place of business in New York. (Doc. 1, ¶ 9). It is a resident of Colorado and New York. (Doc. 1, ¶ 10). Thus, while this Court considers Plaintiff's choice of forum and acknowledges that Plaintiff prefers this District, the factor is not any more paramount than another factor. *Regmund*, 2016 WL 5794227, at *5 (giving the forum choice of out-of-state plaintiffs some degree of consideration but not enhanced or paramount consideration).

Additionally, the Court finds that the events giving rise to the action, for the purposes of venue, "occurred" in the Southern District of Texas. As noted *supra*, for litigation related to non-payment or underpayment, an omission to remit payment occurs where the payor is located. *LWR Time, Ltd.,* 2012 WL 2905187, at *8 (finding that the events giving rise to litigation based upon a failure to remit payment occurred in the location where the payor was located). Here, all Defendants are domiciled in Texas and the alleged underpayments occurred in the Southern District of Texas. (Doc. 1, ¶ 62; 12, 14, 17, 21-31). In similar circumstances, courts in this Circuit have found this factor to weigh either slightly against or in favor of transfer. *Compare Shamrock Materials*, 2006 WL 1892722, at *3 (holding that venue in Pennsylvania was improper because the payor was located outside of Pennsylvania, despite much of the performance and services related to the contract taking place in Pennsylvania) *with Etheridge v. World Mktg. of Am., Inc.,* No. 1:20-CV-00272, 2021 WL 1564336, at *4 (M.D. Pa. Apr. 21, 2021) (finding the first factor to slightly weigh against transfer because "even if *less* deference to [plaintiff's] choice of forum than usual is warranted because he chose to file suit outside of his home forum, that does not lead the court to conclude that *no* deference is warranted"). Balancing Plaintiff's choice of this District with the mitigating factors of

9

Plaintiff's status as a non-resident and non-payment taking place in the Southern District of Texas, this Court finds that the first factor is neutral.

### 2. Defendants' Choice of Forum

The second factor, Defendants' choice of forum, is neutral. *See Jumara*, 55 F.3d at 879. As Defendants point out, this factor is redundant to the transfer analysis because Defendants' preference for the Southern District of Texas is inherent in this motion. (Doc. 39, at 15 n.5); *see Etheridge*, 2021 WL 1564336, at *4 ("'in reality [the second factor] does little more than frame the issue, because there would be no motion to transfer unless the defendant prefers a different forum.'") (quoting *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018)).

### 3. Where the Claims Arose

The third factor examines where the claim arose. *See Jumara*, 55 F.3d at 879. Defendants provide that in matters related to underpayment of necessary payments or breach of contract, a claim arises where the defendant failed to pay. (Doc. 39, at 17). Therefore, according to Defendants, Plaintiff's claims arose in the Southern District of Texas, where all Corporate Defendants reside, where all relevant accounts are located, and where all Individual Defendants reside and work. (Doc. 1, ¶¶ 12-31, 62-63, 132, 161-163, 174-175, 181-189). In opposition, Plaintiff contends that royalty payments and monthly statements related to oil and gas payments were printed and mailed in Tulsa, Oklahoma, Austin, Texas, or Fayetteville, Arkansas. (Doc. 45, at 13).

As discussed *supra*, an omission to remit payment occurs where the payor is located. *LWR Time, Ltd.,* 2012 WL 2905187, at *8. Plaintiff contends that because Defendants' third-party printing and mailing services occurred outside of the Southern District of Texas,

Defendants cannot argue that the claim arose in that district. (Doc. 45, at 13). The Court agrees that not all activities related to alleged underpayment of royalties took place in the Southern District of Texas. However, Plaintiff makes no allegations that those payments took place, or were received, in the Middle District of Pennsylvania. (Doc. 1). It is true that the wells related to the contracts exist in Pennsylvania, but Plaintiff's claims largely do not relate to the wells themselves. (Doc. 1). Instead, their claims deal with allegations of RICO violations, fraud, conspiracy, breach of contract, and other financial crimes arising from disputes about the royalty agreements and payments between the parties. (Doc. 1). As noted, for such claims, the location of the payor, including its headquarters, is the situs of the omission giving rise to the claim. *See LWR Time, Ltd.*, 2012 WL 2905187, at *8 (holding when claims related to a company's, whose headquarters were in Switzerland, failure to remit necessary payments to individuals in Pennsylvania, those claims did not "arise" in Pennsylvania). Defendants are all located in Texas, including any offices and bank accounts from which the payments to Plaintiff were drawn. (Doc. 1, ¶ 62; 12, 14, 17, 21-34).[1] Accordingly, the third private interest factor favors transfer. *See Regmund*, 2016 WL 5794227, at *5 ("[d]efendant has proffered evidence that the individuals responsible for determining the amount of the royalties to be paid [on a gas and oil agreement] are located in Texas. On the whole, this factor weighs in favor of transfer"); *Petroleum Serv. Co.*, 2024 WL 816619, at *5 (finding that this factor heavily favored transfer when "plaintiff's claims arose from the alleged conduct of defendant's Missouri-based employees").

---

[1] To the extent that printing and mailing took place in Tulsa, Austin, or Fayetteville, those locations are still not in the Middle District of Pennsylvania.

### 4. Convenience of the Parties and Witnesses

The fourth and fifth private interest factors consider the convenience of the parties and any potential witnesses. *Jumara*, 55 F.3d at 879. The Court finds that these factors favor transfer. Defendants argue that "[a]ll nine Defendants reside in that district, and it goes without saying that litigating this case where they reside is more convenient than in a distant forum." (Doc. 39, at 18). Defendants add that non-party witnesses are also likely to reside in Texas, as many will likely be employees of the Corporate Defendants. (Doc. 39, at 18). Additionally, Defendants contend that Plaintiff would have to travel for litigation to either forum, so it cannot be said that transfer would be heavily less convenient to Plaintiff. (Doc. 39, 18). Plaintiff responds that it is a small business, while Corporate Defendants are large corporations with greater financial flexibility. (Doc. 45, at 14-15). Plaintiff states that with this in mind, travel from New York, where it is headquartered, to Pennsylvania would be less expensive than flying to Texas. (Doc. 45, at 14-15).

Typically, courts consider identified witnesses and their location for this factor. *See Regmund*, 2016 WL 5794227, at *8-9 (analyzing the parties' identified witnesses and their locations and convenience for this factor); *Petroleum Serv. Co.*, 2024 WL 816619, at *5. Additionally, Courts consider whether a party would be unable to afford to travel to the transferee forum. *Petroleum Serv. Co.*, 2024 WL 816619, at * 5 ("[c]onvenience to the parties evaluates the parties' relative physical and financial conditions, including who can afford travel to the transferee forum[.]"). Here, as noted, all Corporate Defendants are residents of Texas and operate primarily in Texas. (Doc. 1, ¶ 62; 12, 14, 17, 21-34). Individual Defendants allegedly responsible for the underpayment of royalties and any alleged illegal schemes by Corporate Defendants are also residents of Texas and work in Texas. (Doc. 1, ¶ 62; 12, 14,

17, 21-34). While neither party has identified all of its witnesses at this stage in the litigation, it is likely that many will be individuals familiar with Corporate Defendants' work in Texas. Next, while the Court agrees that Corporate Defendants are more likely to be able to afford travel, the Individual Defendants should not be punished for the Corporate Defendants' financial status. Additionally, Plaintiff has not claimed that it would be *unable* to travel to the transferee forum; it instead bases its arguments off the relative earnings of the Corporate Defendants compared to it. The Court finds that the fourth and fifth factors are thus neutral or slightly favor transfer. See *Petroleum Serv. Co.*, 2024 WL 816619, at * 5 (finding that the convenience factors are neutral when "based on the information available to the court, both parties appear to be similarly situated" in terms of identified witnesses and ability to travel); see also *Jacobowitz v. Range Res. Corp.,* No. 2:21-CV-00301-RJC, 2021 WL 2457545, at *5 (W.D. Pa. June 16, 2021) (transferring a securities misrepresentations case related to an oil and gas corporation's activities on its Pennsylvania properties to Texas, where the company was headquartered because "the named individual defendants, as well as the majority if not all of the [corporate defendant's] employees are located in the proposed forum, and it is plainly evident that the proposed forum would be a more convenient forum"); *Etheridge*, 2021 WL 1564336, at *5-6 (holding that the convenience factors are neutral when there is no evidence that a particular witness would be unavailable in one forum).

  5. **Location of books and records**

The sixth private interest factor relates to the location of books or records. Courts have given this factor less weight in the age of modern technology where records can be produced or transmitted electronically. See *Regmund*, 2016 WL 5794227, at *11 ("[m]odern technological advances have rendered this factor less significant than it was previously.)The

parties do not dispute that this factor is neutral here. Therefore, the sixth public interest factor is neutral. *See Petroleum Serv. Co.*, 2024 WL 816619, at *6 ("the parties have not identified any documents that cannot be easily reproduced and provided in electronic format. This factor is thus neutral.").

### C.   THE PUBLIC INTEREST *JUMARA* FACTORS

The Court next turns to the six public interest factors. *See Jumara*, 55 F.3d at 879-80. The public interest factors ask the Court to consider "'where litigation can proceed in the most efficient and inexpensive fashion.'" *Petroleum Serv. Co.*, 2024 WL 816619, at *6 (quoting *In re Amkor Tech., Inc. Sec. Litig.*, No. CIV.A. 06-298, 2006 WL 3857488, at *6 (E.D. Pa. Dec. 28, 2006)).

#### 1.   Enforceability of a Judgment

Neither party contests that either forum would have equal ability to enforce its judgment. (Doc. 39, at 19; Doc. 45, at 17). This Court agrees that this factor is neutral. *See Etheridge*, 2021 WL 1564336, at *6 ("Neither party has presented an argument regarding the enforceability of a judgment in either forum. The court is not aware of any reason why this factor presents a concern, and accordingly this factor is not relevant.").

#### 2.   Practical Considerations that Could Make Trial Easier, Quicker, or Less Expensive

The second public interest factor asks about practical considerations affecting any potential trial's ease, efficiency, or expense. *See Jumara*, 55 F.3d at 879. Defendants argue that this factor favors transfer because the claim arose in the Southern District of Texas and the burden of travel for the Individual Defendants and likely witnesses in Texas would render a Pennsylvania trial inefficient and more expensive. (Doc. 39, at 20). Plaintiff responds that this factor weighs against transfer, since the wells are located in Pennsylvania, and Plaintiff makes

several allegations related to SWN Production's activities in Pennsylvania. (Doc. 45, at 17-18).

This factor favors transfer. The Court appreciates Plaintiff's concern that the Leased Property is located in Pennsylvania, and some parts of discovery may relate to SWN Production's development of the wells. (Doc. 45, at 17-18). To support its argument that trial would be more efficient in Pennsylvania, Plaintiff points to its allegations in the Complaint about SWN Production's property in Pennsylvania. (Doc. 45, at 17-18). However, Plaintiff's claims themselves are only related to Defendants' involvement in an alleged scheme to conceal profits, make fraudulent misrepresentations related to their sales and owed royalties, and defraud Plaintiff. (Doc. 1, at 33-57). Because the claims seem to arise from fraud and financial misrepresentations, without more, this Court does not see how access to the Leased Property itself would be particularly relevant for a trial. On the other hand, as discussed *supra*, all Defendants, as well as likely witnesses employed by Corporate Defendants, are located in the Southern District of Texas. (Doc. 1, ¶ 62; 12, 14, 17, 21-34). This factor thus favors transfer. See *Jacobowitz*, 2021 WL 2457545, at *6 (finding that the second public interest factor favored transfer in a case about fraud related to oil and gas production in Pennsylvania because "the [i]ndividual [d]efendants and [corporate defendant], as well as the substantial preponderance of material witnesses overall, are located in the Northern District of Texas. This factor weighs in favor of the transfer.").

3. **Court Congestion**

The third public interest factor weighs administrative difficulties related to court congestion in either forum. See *Jumara*, 55 F.3d at 879. The parties do not dispute that the

15

Southern District of Texas is a slightly more congested jurisdiction, thus this factor weighs against transfer. (Doc. 39, at 20-21; Doc. 45, at 18-19).

### 4. Local Interest

The fourth public interest factor weighs the local interest of each forum has in resolving the controversy. *See Jumara*, 55 F.3d at 880. Defendants submit that this factor favors transfer because the Southern District of Texas has an interest in adjudicating the disputes of corporate entities that reside there. (Doc. 39, at 21). Plaintiff contends that the production and sale of natural gas has become a major industry in Pennsylvania and the blooming industry is subject to state law and environmental regulations. (Doc. 45, at 19).

The Court finds that this factor is neutral. First and foremost, the Court agrees that since Corporate Defendants are Texas corporations, the Southern District of Texas has some interest in adjudicating this matter. (Doc. 1, ¶ 62; 12, 14, 17); *see Petroleum Serv. Co.*, 2024 WL 816619, at *7 ("a party's status as a state corporate entity gives a district in that state 'at least some interest in adjudicating that dispute.'") (quoting *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 692 F. Supp. 3d 421, 438 (D. Del. 2023)). Similarly, while Pennsylvania does have a budding oil and gas industry, Texas is also a state with a major oil and gas industry. *See* Lawrence J. Trautman, *Who Sits on Texas Corporate Boards? Texas Corporate Directors: Who They Are & What They Do*, 16 Hous. Bus. & Tax L. J. 44, 48 (2016) ("By 2013, Texas was 'the largest single producer of both oil and gas in the country, with crude oil and natural gas production representing 30.5 percent and 28.6 percent of national output, respectively.'") (quoting Luis Torres, *Texas Industrial Structure: How Much Does Texas Rely on Energy*?, Tex. A&M U. Real Est. Ctr. 1-3 (June 2013)); Bernhard Grossfeld & Edward J. Eberle, *Patterns of Order in Comparative Law: Discovering and Decoding Invisible Powers*, 38 Tex. Int'l L.J. 291 (2003)

(noting that courts have referred to Texas as a unique state regarding the share of its economy that is tied to oil production); Bernhard Grossfeld, Geography and Law, 82 Mich. L. Rev. 1510, 1515 (1984) (same). Finally, this action is based on fraud allegations and does not implicate Pennsylvania environmental law. (Doc. 1); *see Jacobowitz*, 2021 WL 2457545, at *6 (finding that plaintiff's argument that securities claims related to an oil and gas corporation's activities in Pennsylvania do not implicate local interests because it "is an action based principally upon securities laws and regulations [. . .]against a corporation located in Texas, whose executives, employees and accountants are alleged to have violated federal securities laws by misstating central information in their securities filings which were drafted, filed and certified in Texas."). Accordingly, the local interests factor is neutral.

### 5. Public Policies of the Fora

Defendants contend that the sixth factor, the public polices of the fora, is neutral, and Plaintiff does not meaningfully analyze the fifth public interest factor in its brief in opposition. (Doc. 39, at 21; Doc. 45, at 20). This Court finds that this factor is neutral because it sees no corresponding public policy interest in either state dealing with the underpayment of royalties related to oil and gas earnings. *See Jumara*, 55 F.3d at 882 (finding the public policy factor neutral when, unlike civil rights law, there is no state policy interest in resolving the dispute).

### 6. Trial Judge's Ability to Apply State Law

The sixth factor considers the trial judge's familiarity with the applicable state law in the transferee forum. Defendants acknowledge that this dispute will require the Southern District of Texas to apply Pennsylvania law. However, Defendants maintain that this factor is neutral, as federal judges routinely apply out-of-state, the state law claims are not complex, and the "Southern District of Texas is 'more than capable' of applying Pennsylvania law."

(Doc. 39, at 22). In opposition, Plaintiff contends that this Court's familiarity with Pennsylvania law weighs against transfer.

It is well-settled that federal courts regularly apply the laws of states other than where they sit and do so capably. *Etheridge*, 2021 WL 1564336, at *7 (finding the applicable state law factor neutral because "'federal judges routinely apply the law of a State other than the State in which they sit'" and "the district court in either forum is more than capable of applying another state's law.") (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013)) (citing *McCraw v. GlaxoSmithKline*, No. CIV.A. 12-2119, 2014 WL 211343, at *7 (E.D. Pa. Jan. 17, 2014)) (internal quotation marks omitted). Therefore, the Court finds that this factor is neutral.

Having considered all *Jumara* private and public interest factors, the weight of the factors favor transfer. Accordingly, Defendants' motion to transfer venue pursuant to Section 1404(a) will be **GRANTED**. (Doc. 34).

IV. CONCLUSION

Based on the foregoing, Defendants' motion to transfer is **GRANTED**. (Doc. 34).

An appropriate Order follows.

**Dated: October 21, 2024**

BY THE COURT:

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**